**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HARFORD MUTUAL INSURANCE CO.** | * | |
| *Plaintiff,* | * | |
| v. | * | **Civil Case No: 1:25-cv-04003-JMC** |
| **MILLERS CAPITAL INSURANCE CO.** | * | |
| *Defendant.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Harford Mutual Insurance Company ("Harford Mutual"), initiated the present lawsuit on December 8, 2025 against Defendant Millers Capital Insurance Company ("Millers Capital"). (ECF No. 1). Plaintiff seeks a declaratory judgment determining that Millers Capital is obligated to defend Alvin L. Aubinoe, Inc. ("Aubinoe") in an underlying case involving an alleged sexual assault. *Id.* Presently pending before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 27) and Defendant's Motion for Summary Judgment (ECF No. 32). The motions are fully briefed (ECF Nos. 27, 32, 34, 41) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Harford Mutual's motion for summary judgment (ECF No. 27) will be GRANTED and Millers Capital's motion for summary judgment (ECF No. 32) will be DENIED.

## I. BACKGROUND

### i. *The Underlying Case*

Ms. Tracy Daswell ("Ms. Daswell") brought the underlying action against Aubinoe in the Superior Court of the District of Columbia, in which the operative pleading is the Second Amended

Complaint.[1]  (ECF No. 27-1).  There, Ms. Daswell alleges she was a tenant in a building owned by 3921 Kansas LLC ("3921 Kansas") and managed by Aubinoe.  *Id.* at 1-2.[2]  Ms. Daswell alleges that Mr. Malick Sy ("Mr. Sy") was an agent, employee, or contractor for Aubinoe, who was "dispatched to [Ms. Daswell's] unit under a work order to conduct repairs.[3]  *Id.* at 2.  Ms. Daswell alleges Mr. Sy sexually assaulted Ms. Daswell and asserts claims of negligence, assault and battery, negligent hiring, retention, and supervision, negligent infliction of emotional distress, breach of implied warranty of habitability, and breach of quiet enjoyment against Aubinoe, Mr. Sy, and 3921 Kansas LLC.  *See generally id.*

ii.      *The Policies*

Harford Mutual issued a Commercial General Liability Policy, effective for one year (the "Harford Mutual Policy"), from April 29, 2022 to April 29, 2023.  (ECF No. 27-2).  Under the policy, Harford Mutual insures Aubinoe.  *See id.* Harford Mutual asserts that to date, it has been defending Aubinoe in the underlying Daswell litigation.  (ECF No. 1).  Also at issue is a Millers Capital Policy issued to 3921 Kansas, with effective dates of June 30, 2022 to June 30, 2023 (the "Millers Policy").  (ECF No. 27-3).  Millers Capital further relies on a contract for property management services between 3921 Kansas and Aubinoe in support of the Millers Capital position that it has no duty to defend Aubinoe.  *See generally* (ECF No. 32). The policies and management agreement in dispute contain the following terms and definitions:

1.      <u>Terms of the 3921 Kansas LLC-Aubinoe Management Agreement</u>

---

[1] Because Ms. Daswell brought the underlying case, the parties often refer to Ms. Daswell as "plaintiff." To that extent, some of the Court's quoted references to the parties' briefs may refer to Ms. Daswell as plaintiff.

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

[3] Because Mr. Sy is a defendant in Ms. Daswell's litigation, the parties often refer to Mr. Sy as "defendant Sy."  To that extent, some of the Court's quoted references to the parties' briefs may refer to Mr. Sy as "defendant" or "defendant Sy."

Aubinoe and 3921 Kansas entered into a Management Agreement on February 1, 2020 (the "Management Agreement"). (ECF No. 27-4). There, 3921 Kansas is referred to as "Owner" and Aubinoe is referred to as "Manager." *Id.* at 1. The Management Agreement states, "Owner hereby appoints Manager, and Manager hereby accepts appointment…as the exclusive managing agent to maintain, operate, manage, supervise, rent and lease a 24 unit Multi-Family Rental Property…known as 3921 Kansas Ave. NW located at 3921 Kansas Ave., NW, Washington, D.C. 20011." *Id.* The Management Agreement includes the following language at issue in the parties' briefs: [4]

> Notwithstanding the foregoing, Owner shall not be required to defend, indemnify or reimburse Manager against liabilities, claims or damages suffered as a result of (I) negligence or willful misconduct, bad faith, willfull misfeasance and nonfeasance in the performance of its duties and obligations hereunder; (ii) reckless disregard of such duties and obligations; or (iii) willful acts in violation or beyond the scope of the Agreement on the part of Manager, its agents or employees.

*Id.* at 7. The Management Agreement continues to state,

> Manager shall indemnify and hold Owner harmless from contract or other liabilities, claims or damages, to the extent that the same are not covered by insurance, incurred by reason of Manager's (1) negligence or willful misconduct, bad faith, willful misfeasance and nonfeasance in the performance of its duties and obligations hereunder; (2) reckless disregard of such duties and obligations; (3) willful acts of fraudulent representations made by Manager.

*Id.* Concerning Insurance obligations, the Management Agreement states,

> **Insurance**: If requested by Owner, Manager shall cause to be placed and kept in force at Owner's expense public liability insurance, extended umbrella insurance, burglary and theft insurance, worker's compensation insurance and (if applicable) boiler coverage. All insurance coverage shall be placed with companies and in such amounts with such additional coverages and deductibles as shall be reasonably acceptable to Owner and any mortgagee secured by the Project. All policies of insurance shall name Owner and the mortgagee secured on the Project as named insured or loss payees thereunder, as their respective interests may appear. Manager shall cooperate in every reasonable manner with respect to the administration of

---

[4] The Court will consider whether these provisions have any impact on the instant duty to defend litigation concerning the Millers Capital insurance policy in greater detail below. For the sake of completeness and context, the Court has summarized the provisions of the Management Agreement the parties' reference in their briefs.

such insurance and any loss thereunder. Manager shall promptly investigate and report to Owner and to any insurance companies involved, all accidents and claims for damage relating to the ownership, operation and maintenance of the Project and any damage or destruction to the Project. Manager is authorized to settle any and all claims against insurance companies not in excess of Twenty-Five Thousand Dollars ($25,000.00) arising out of any policies, including execution of proof of loss, the adjustment of losses, signing or receipts and collection of proceeds. If any claim is greater than Twenty-Five Thousand Dollars ($25,000.00), Manager shall not act without the prior written approval of Owner.

*Id.* at 4.

### 2.    Millers Capital Policy Coverage

The rights under the Millers Capital Policy are the subject of the greatest dispute in the briefs before the Court (ECF Nos. 27-1, 32, 34).  The Millers Capital Policy States, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'…to which this insurance applies," and that Millers Capital "will have the right and duty to defend the insured against any 'suit' seeking those damages." (ECF No. 27-3 at 83).  The Millers Capital Policy also states that "[e]ach of the following is also an insured…any organization while acting as your real estate manager." *Id.* at 94.  Moreover, the Millers Capital Policy defines an "occurrence" as "continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 97.

The Millers Capital contains one exclusion paragraph at issue in this case, that is for "Contractual Liability."  (ECF No. 27-3 at 85).  The exclusion is as follows:

This Insurance does not apply to:

…

**b. Contractual Liability** "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured

4

contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

> **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

> **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*Id.* at 85-86.

### 3. Harford Mutual Policy Coverage

It is undisputed that Harford Mutual has been defending Aubinoe since the inception of Ms. Daswell's suit, and Harford Mutual now seeks a declaration that it has no duty to defend based on the Millers Capital Policy, and that it is instead Millers Capital that has a duty to defend Aubinoe.  (ECF Nos. 1, 27, 32, 34, 41).  As part of its argument in favor of Harford Mutual's duty to defend, Millers Capital raises one provision in the Harford Mutual policy.

> **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**
> **2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:
> > **a**. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
> > **b**. This insurance applies to such liability assumed by the insured;
> > **c**. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";
> > **d**. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
> > **e**. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee, and
> > **f**. The indemnitee:
> > > (1) Agrees in writing to:
> > > > (a) Cooperate with us in the investigation, settlement or defense of the "suit";
> > > > (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b(2) of **Section I – Coverage A – Bodily Injury And Property Damage Liability**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

(ECF No. 27-2 at 27-28).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998). "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

## III.   ANALYSIS

The central dispute before the Court turns on whether, as a matter of law, it is Harford Mutual or Millers Capital that is required to defend Aubinoe for Ms. Daswell's harm. Harford Mutual argues that Millers Capital has a duty to defend Aubinoe because it was a management organization under the Millers Capital policy. (ECF No. 27 at 3, 5). Notwithstanding its Policy with 3921 Kansas, Millers Capital argues that by entering into the Management Agreement, "3921 Kansas did not agree to indemnify or defend Aubinoe for its own negligence," and so "Millers cannot be held responsible for indemnifying and defending Harford's insured for its own negligence in failing to adequately supervise and vet Sy…" (ECF No. 32 at 26). The parties argue in favor of their respective positions each by relying on different provisions of the Millers Capital Policy and the Management Agreement.

### A.   Millers Capital Has a Duty to Defend Aubinoe, its Insured's Property Manager, as a Matter of Law

"[T]he interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts.[5]" *Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061 (2001); *see Connors v. Gov't Emps. Ins. Co.*, 442 Md. 466, 480, 113 A.3d 595 (2015); *Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 540, 921 A.2d 245 (2007). In such actions, "[t]he insured party bears the burden of proving that coverage exists." *Cordish Co., Inc. v. Affiliated FM Ins. Co.*, 573 F. Supp. 3d 977, 994 (D. Md. 2021). When "deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 137, 761 A.2d 997, 1005 (2000) (internal quotations omitted). Thus, the insurance policy and any endorsements "must be construed as a whole and 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution' must be examined." *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 79, 899 A.2d 819 (2006) (quoting *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142, 656 A.2d 779 (1995)).

"The court bears responsibility for ascertaining the scope and limitations of an insurance policy." *Cordish Co., Inc.*, 573 F. Supp. 3d at 994. "Maryland courts have established a two-part inquiry for determining whether an insurer has a duty to defend its insured" in a tort action. *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 648 (D. Md. 2009). "First, the court must determine 'the coverage and ... the defenses under the terms and requirements of the insurance policy.'" *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 438 A.2d 282 (1981)). This portion of the inquiry "focuses upon the language and requirements of the policy." *Pryseski*, 292 Md. at 438. The second portion of this inquiry requires the Court to determine whether the "allegations in the tort action potentially bring the tort claim within the

---

[5] The parties agree Maryland law applies to the contracts at issue. *See* (ECF Nos. 27, 32, 34, 41).

policy's coverage." *Id.*  If there is any doubt as to "whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Id*. at 107 (quoting *U.S. Fid. & Guar. Co. v. Nat'l Paving Co*., 228 Md. 40, 54, 178 A.2d 872 (1962)). If an insurer has no duty to defend, it follows that there is no duty to indemnify.[6] *Nautilus Ins. Co.*, 206 F. Supp. 2d at 681-82.

Turning to principles of construction, Maryland courts construe the insurance policy "as a whole to determine the intention of the parties" and to examine "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution. *Id.* at 648. Insurance policies are to be construed under the "ordinary principles of contract interpretation." *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 655, 796 A.2d 758 (2002) (internal quotations marks omitted). Thus, the operative policy's language should be afforded the "usual, ordinary, and accepted meaning" that "a reasonably prudent layperson would attach to the term." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co*., 330 Md. 758, 779, 625 A.2d 1021 (1993). Thus, "if no ambiguity in the terms of the insurance contract exist, a court has no alternative but to enforce those terms." *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 171, 702 A.2d 767 (1997).

Here, the Millers Capital Policy clearly states, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'…to which this insurance applies," and that Millers "will have the right and duty to defend the insured against any 'suit'

---

[6] "In Maryland, an insurer's 'duty to defend is distinct conceptually from its duty to indemnify, i.e., its obligation to pay a judgment.'" *McMillan v. Erie Ins. Co.*, Civil Action No. ELH-25-2444, 2025 WL 3012887, at *9 (D. Md. Oct. 28, 2025) (quoting *Walk v. Harford Cas. Ins. Co.*, 382 Md. 1, 15, 852 A.2d 98 (2004)). Where "the duty to defend is triggered only if the insured's established liability is actually covered under the policy," the duty to indemnify "depends upon liability." *Id.*

seeking those damages." (ECF No. 27-3 at 83).  The Millers Capital Policy further defines as an insured "any organization while acting as your real estate manager."  *Id.* at 94.

That Aubinoe was an organization acting as 3921 Kansas's real estate manager is undisputed.  The Second Amended Complaint alleges as much, and the parties do not dispute it.[7] Taking the contract as a whole, no reasonable jury could find that the ordinary meaning of the terms or who is intended to be an insured is ambiguous.  As such, the underlying complaint clearly creates a potentiality of coverage because it alleges that Aubinoe was acting as 3921 Kansas LLC's property manager and engaged in negligent conduct that resulted in Ms. Daswell's harm.  (ECF No. 27-1).  Therefore, taking the underlying Complaint and Millers Capital Policy language together, Millers Capital has a clear, unambiguous duty to defend 3921 Kansas's property manager, Aubinoe.  *McMillan*, 2025 WL 3012887, at *9; *Sheets*, 342 Md. at 643.

Millers Capital attempts to create a fact issue by introducing the terms of the Management Agreement between 3921 Kansas LLC and Aubinoe.  (ECF No. 32 at 25) ("The unambiguous, enforceable terms of the Management Agreement preclude any duty to defend or indemnify Harford's insured.").  To that end, a question arises as to whether the Court may consider the Management Agreement in the two-step duty to defend inquiry.

### B.    Millers Capital's Duty to Defend Aubinoe Arises from its Policy with 3921 Kansas Regardless of the Management Agreement Indemnification Provision

Millers Capital urges that the Management Agreement is relevant to a duty to defend analysis because "[i]n addition to examining the insurance policy and the allegations raised by the

---

[7] The Court observes some discussion from Harford Mutual concerning the Management Agreement's definition of Aubinoe as a "manager."  Here, that the Second Amended Complaint alleges that Aubinoe was acting as the property manager is the operative fact—not that Aubinoe is defined as a "manager" under the Management Agreement.  A duty to defend inquiry is "broad" and considers the language of the policy under the ordinary principles of contract interpretation and whether there is a potentiality of coverage based on that language and the allegations set forth in an underlying complaint.  *See McMillan*, 2025 WL 3012887, at *9. Therefore, the Court is persuaded by the unambiguous terms of the contract and underlying allegations in the Complaint, not the Management Agreement.

tort plaintiff, the [C]ourt may also consider 'extrinsic evidence' adduced by the insured to determine if the tort plaintiff's suit is covered by the policy." Harford Mutual disputes this possibility. (ECF No. 34 at 4).

Although the duty to defend is generally determined by the complaint itself, "[a]n insured may rely on extrinsic evidence where the underlying complaint 'neither conclusively establishes nor negates a potentiality of coverage.'" *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 16 (2004) (quoting *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 108 (1995)). Ultimately, "[i]f there is any doubt as to whether there is a duty to defend, it is resolved in favor of the insured." *Id.* In *Sheets v. Brethren Mutual Insurance Company*, the then Court of Appeals of Maryland noted that "if the allegations in the underlying complaint are ambiguous as to whether there exists a potentiality of coverage under an insurance policy, the *insured* may rely on extrinsic evidence." *Sheets v. Brethren Mut. Ins. Co.*, 341 Md. 634, 640 n.2 (1996) (citing *Aetna v. Cochran*, 337 Md. 98, 107–12, (1995) (emphasis in original). The court continued, "[t]he *insurer,* however, may not use such evidence to contest coverage if the allegations in the underlying tort suit sufficiently establish a potentiality of coverage." *Id.* (emphasis in original). Thus, while Millers Capital is correct that in certain instances, it is proper to contemplate extrinsic evidence, Harford Mutual is also correct that such a possibility is not absolute, and the Millers Capital proposition is an incomplete representation of Maryland law.

*Travelers Property Casual Company of America v. Liberty Mutual Insurance Company*, a case upon which both parties rely, offers some guidance. *Travelers Prop. Cas. Co. of Am. v. Liberty Mut. Ins. Co.*, 444 F.3d 217, 222 (4th Cir. 2006). Ten years later, the Fourth Circuit summarized its *Travelers* reasoning as follows:

> In *Travelers*, State Street Bank hired Ryland Mortgage Company to service and
> manage mortgage loans held by State Street and to manage any properties State

11

Street took over through foreclosure. By contract, Ryland was obligated to indemnify State Street for any claims arising from Ryland's management of the loans and property. A visitor to a foreclosed property was injured and sued State Street and Ryland. Ryland was insured by Travelers, and State Street was insured by Liberty Mutual. Travelers provided a defense to Ryland and subsequently sought contribution from Liberty Mutual, arguing that Ryland was an additional insured under the policy issued to State Street.

On appeal, we agreed with Travelers that Ryland was covered by the Liberty Mutual policy. **The Liberty Mutual policy included State Street's "real estate managers" as additional insureds, and Ryland's contractual duties qualified it as a real estate manager. Liberty Mutual, therefore, had an "independent contractual obligation to provide coverage to Ryland." And because Liberty Mutual had an independent duty to provide coverage to Ryland, the indemnification agreement between Ryland and State Street was irrelevant:**

The issue here is coverage for <u>only</u> Ryland's liability. Travelers concededly insured Ryland, and because of Liberty Mutual's insuring language, it must also insure Ryland through its additional insureds clause. This is not a case where we are determining State Street's liability vis-à-vis Ryland's. **The fact that Ryland agreed to indemnify State Street under the Pooling Agreement does not absolve Liberty Mutual of its independent contractual obligation to insure Ryland as State Street's "real estate manager."** If the issue in this case turned on the underlying liability as between Ryland and State Street, we would likely conclude, as Liberty Mutual urges, that Ryland bore full responsibility because of its indemnification agreement. But even then, having determined that Ryland had legal responsibility for [the injuries to the property-visiting plaintiff], we would still have to determine who insured that liability. In this case Travelers concededly provided coverage, as it issued a policy directly to Ryland as the named insured. **But Liberty Mutual, which issued a policy to State Street as its named insured, also provided coverage to additional insureds, not because of any indemnity clause running in favor of its insured State Street but because of its independent undertaking to Ryland.**

**Thus, because we are deciding coverage for only Ryland's liability to [the property-visiting plaintiff], the indemnification agreement is irrelevant.**

*Interstate Fire and Casualty Company v. Dimensions Assurance Ltd.*, 843 F.3d 133, 142-43 (4th Cir. 2016) (quoting *Travelers*, 444 F.3d at 224-25) (cleaned up) (emphasis added).

First, following *Sheets*, and based on the analysis *supra* Section III.A., neither the Millers Capital Policy, nor a potentiality of coverage are ambiguous.  *See Sheets*, 341 Md. at 640. To begin, neither party is an insured.  As explored above, the Complaint alleges in multiple instances

12

that Aubinoe, the insured, was an entity acting as the 3921 Kansas property manager and that its negligence resulted in Ms. Daswell's harm.  (ECF No. 27-1 at 2) ("Defendant ALVIN L. AUBINOE, INC. is the property management company for the property.").  Under the Millers Capital Policy, which defines as an insured "any organization while acting as your real estate manager," the underlying Complaint unambiguously states a potentiality of coverage. (ECF No. 27-3 at 94). Affording all terms their ordinary meaning, the Millers Capital Policy unambiguously defines Aubinoe as an insured by way of its role as an organization acting as a real estate manager for 3921 Kansas. The Complaint unambiguously alleges the same. *See* (ECF No. 27-1). Where Millers Capital may be displeased with the conflict it emphasizes between the indemnification provision in the Management Agreement and its Policy with 3921 Kansas, the operative terms here are those under the Millers Capital Policy, not an unrelated Management Policy between Aubinoe and Millers Capital.  *Sheets*, 341 Md. at 640; *Travelers*, 444 F.3d at 224-25. Therefore, the Court may not consider the Management Agreement as extrinsic evidence here because the Millers Capital Policy and accompanying potentiality of coverage is unambiguous as a matter of law.  *Id.*

However, even if the Court were to consider the Management Agreement, *Travelers* makes clear that the operative contract is the Policy between Millers Capital and 3921 Kansas, not the Management Agreement between Aubinoe and 3921 Kansas.  *Travelers*, 444 F.3d at 225 (describing the indemnification agreement between Ryland and State Street as "irrelevant" to Liberty Mutual's policy with State Street).  The *Travelers* court recognized Ryland as a "real estate manager" based on its obligations to State Street by way of their contract, and the Fourth Circuit emphasized that Liberty Mutual's argument in favor of extending the indemnification policy language into its State Street policy "conflate[d] its obligation to insure Ryland directly and its separate obligation to insure State Street." *Id.* at 224.

13

Here, Millers Capital attempts to blur those same lines. Like in *Travelers*, Millers Capital fails to account for the fact that it has an *independent* obligation to insure Aubinoe though its Policy with 3921 Kansas, regardless of 3921 Kansas's liability. *Id.* at 224-25 ("This is not a case where we are determining State Street's liability vis-à-vis Ryland's. The fact that Ryland agreed to indemnify State Street under the Pooling Agreement does not absolve Liberty Mutual of its independent contractual obligation to insure Ryland as State Street's 'real estate manager'"); s*ee also Dimensions Assurance*, 843 F.3d at 143 ("It may well be that the primary purpose of the Dimensions policy was to provide insurance coverage for the Hospital and its direct-hire employees. Nonetheless, the policy that Dimensions chose to issue used language whose ordinary meaning includes Agency-provided employees as additional insureds."). Thus, even if a jury were to find some provision in the Management Agreement that requires Aubinoe to indemnify 3921 Kansas for any harm, such a finding does not obviate Millers Capital's independent obligation to defend Aubinoe by way of its Policy with 3921 Kansas as a matter of law. Millers Capital may not now avoid its clear duty to defend on the basis that the Aubinoe-3921 Kansas Agreement included language Millers Capital prefers.[8] *Travelers*, 444 F.3d at 224-25.

Millers Capital does not address the arguments concerning *Travelers* in its Reply. (ECF No. 41 at 2). Instead, Millers Capital reiterates its argument that the Court may consider extrinsic evidence by relying on *Cochran*, in which there was no clear potentiality of coverage without extrinsic evidence. The Court finds such reliance distinguishable from the case here for the reasons set forth above and remains unpersuaded that the Management Agreement controls even if the Court were to consider it. *Cochran*, 337 Md. at 100; *Travelers*, 444 F.3d at 224-25.

---

[8] The Court applies this same reasoning to Millers Capital's fourth argument, that the Management Agreement requires Aubinoe to indemnify 3921 Kansas for any harm. *Travelers* forecloses this possibility. After careful review, the Court can find no term in the Harford Mutual policy requiring it to defend 3921 Kansas.

### C.    Aubinoe Acted as a Real Estate Manager as a Matter of Law

Millers Capital next argues that "the alleged direction and subsequent handling of Defendant Sy would not constitute acting in a real estate management capacity.[9]" (ECF No. 32 at 28).  Thus, Millers Capital argues that it has no duty to defend Aubinoe.  *See id.*  Harford Mutual opposes this position, arguing that Millers Capital does have a duty to defend Aubinoe as a matter of law. (ECF Nos. 27, 34). To that end, Harford Mutual urges

> The pertinent allegations here are the ones against Aubinoe in its capacity as a real estate manager, not the allegations against Sy as an individual. Daswell has alleged that Aubinoe was negligent in failing to exercise reasonable care in providing a safe premises to her and negligent in vetting, hiring, supervising, and training Sy. Millers further ignores that if any part of a plaintiff's complaint potentially falls within coverage, the insurer is required to defend the entire complaint.

(ECF No. 43 at 8). Here, *Travelers* governs again.  The undisputed evidence shows that Aubinoe acted as 3921 Kansas's real estate manager at the time Aubinoe employed Mr. Sy and Ms. Daswell was assaulted.  (ECF No. 27-1; 27-4).  Under *Travelers*, acting as a real estate manager means "a person or entity that manages…real property" for another.  *Travelers*, 444 F.3d at 222.  It is undisputed that Aubinoe was managing the 3921 Kansas property on its behalf at the time Ms. Daswell was assaulted. (ECF No. 27-1; 27-4). Therefore, regardless of whether Mr. Sy was acting within the scope of his employment with Aubinoe, Aubinoe was acting as an insured under the Millers Capital Policy.  *Travelers*, 444 F.3d at 222. To that end, Harford Mutual argues, and the Court agrees, that Millers Capital "cannot plausibly contend that Aubinoe is not acting as a 'real estate manager' when it vets, hires, trains, and supervises its own employees," as Ms. Daswell's Second Amended Complaint alleges.  (ECF No. 34 at 8). As the *Travelers* court stated, "[e]ven if Ryland failed to perform the functions it undertook, that fact would make no difference to whether

---

[9] Harford Mutual agrees that Aubinoe would not be an "Additional Insured" under the policies and clarifies that its position concerns whether Aubinoe is an "Insured," so the Court will not address this issue.

Ryland was a real estate manager…Of course, the fact that Ryland failed to make a repair does not cause it to lose coverage for liability imposed for that failure." *Travelers*, 444 F.3d at 223. Therefore, the alleged failure to properly vet, hire, train, and supervise Mr. Sy would likewise be irrelevant to whether coverage attaches to Aubinoe when it was already acting as a real estate manager.[10] *See id.* Therefore, the Court is satisfied that there is no genuine issue of material fact concerning whether Aubinoe acted as an insured under the Millers Capital Policy.

### D.    No Reasonable Jury Could Conclude that the Harford Mutual Policy insures 3921 Kansas

Millers Capital last argues that Harford Mutual has an obligation to defend and indemnify 3921 Kansas under Harford Mutual's Policy with Aubinoe.  However, the Court finds no basis upon which a reasonable jury could agree with Millers Capital.  First, based on the reasoning set forth above, the Court is unpersuaded by Millers Capital's reliance on the Management Agreement.  Regarding the supplementary payments provision, the Court agrees with Harford Mutual that not all conditions are met.  For example, of the six required conditions, Aubinoe has not assumed any duty to defend 3921 Kansas, nor has 3921 Kansas asked Harford Mutual to defend it such that the Supplementary Payments provision[11] could apply as a matter of law.  (ECF No. 27-

---

[10] Based on this reasoning, the Court disagrees with Millers Capital's assertion that Mr. Sy's conduct is not an "occurrence" because Mr. Sy engaged in an intentional act. (ECF No. 32 at 11).

[11] **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

　　**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

　　**a**. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

　　**b**. This insurance applies to such liability assumed by the insured;

　　**c**. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

　　**d**. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

　　**e**. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee, and

　　**f**. The indemnitee:

2 at 28-29).  In Millers Capital's Reply, Millers Capital argues that each condition has been met because Harford Mutual is currently defending Aubinoe and reiterates its Management Agreement arguments foreclosed by the reasoning above.  However, Millers Capital does not address the issue of the explicit terms not met, such that those requiring 3921 Kansas to ask Harford Mutual to defend and requiring an assumption of liability.  (ECF No. 41 at 3-4).  Accordingly, the Court finds that there is no genuine issue of material fact concerning whether Harford Mutual is required to defend and indemnify 3921 Kansas.

Therefore, Harford Mutual's Motion for Summary Judgment (ECF No. 27) shall be GRANTED and Millers Capital's Motion for Summary Judgment (ECF No. 32) shall be DENIED.

IV.    **CONCLUSION**

For the foregoing reasons, it is this 28th day of May 2026 ORDERED:

---

(1) Agrees in writing to:
(a) Cooperate with us in the investigation, settlement or defense of the "suit";
(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";
(c) Notify any other insurer whose coverage is available to the indemnitee; and
(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and
(2) Provides us with written authorization to:
(a) Obtain records and other information related to the "suit"; and
(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b(2) of **Section I – Coverage A – Bodily Injury And Property Damage Liability**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

17

(1) Harford Mutual's Motion for Summary Judgment (ECF No. 27) is GRANTED;

(2) Millers Capital's Motion for Summary Judgment (ECF No. 32) is DENIED: and

(3) The Clerk is kindly asked to close the case.

Date: <u>May 28, 2025</u>

_____/s/_____
J. Mark Coulson
United States Magistrate Judge
